THIRD DIVISION
April 7, 2010

No. 1-09-0316

| | | |
|---|---|---|
| MARION MORAWICZ and CLARENCE BOWERS, on behalf of themselves and all others similarly situated, | ) ) ) | APPEAL FROM THE CIRCUIT COURT OF COOK COUNTY |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 07 L 6960 |
| | ) | |
| DANIEL W. HYNES, as Illinois State Comptroller, and ALEXI GIANNOULIAS, as Illinois State Treasurer, | ) ) ) | HONORABLE RONALD F. BARTKOWICZ, |
| Defendants-Appellees. | ) | JUDGE PRESIDING. |

JUSTICE STEELE delivered the opinion of the court:

In this case, plaintiffs Marion Morawicz and Clarence Bowers prevailed on a claim against defendants Daniel W. Hynes and Alexi Giannoulias in their official capacities as Illinois State Comptroller and Treasurer, respectively, that funds were unlawfully transferred from the Lawyers Assistance Program (LAP) and the Mandatory Arbitration Fund (MAF) into the state's general revenue fund. Plaintiffs now appeal orders of the circuit court of Cook County denying a permanent injunction, interest and attorney fees. For the following reasons, we affirm.

BACKGROUND

The record on appeal discloses the following facts. On July 5, 2007, Morawicz (an attorney) and Bowers (a party litigant) filed a putative class action against Hynes and Giannoulias in their official capacities, alleging that funds were unlawfully swept from the LAP and MAF into the state's general revenue fund. The "sweeps," or fund transfers, were ostensibly authorized by section 8.45 of the State Finance Act. 30 ILCS 105/8.45 (West 2006). Morawicz and Bowers alleged that the sweeps of court fees for other purposes violated the state constitution by creating

an unreasonable or arbitrary tax classification. Morawicz and Bowers sought injunctive relief and a return of the funds, plus interest, punitive damages, and attorney fees.

On October 4, 2007, Morawicz and Bowers amended their complaint, additionally claiming standing as taxpayers to challenge sweeps from 95 other state funds specified in section 8.45 of the State Finance Act. Morawicz and Bowers also sought an accounting for LAP and MAF. On October 15, 2007, Morawicz and Bowers further amended their complaint to specifically seek a declaration that the amendment of section 8.45 of the State Finance Act (30 ILCS 105/8.45 (West 2006)) by Public Act 94--839 (Pub. Act 94–839, eff. June 6, 2006) was unconstitutional.

Plaintiffs and defendants filed cross-motions for summary judgment. On October 23, 2007, the circuit court entered an order granting summary judgment to Morawicz and Bowers on their specific claim that the amendment of section 8.45 of the State Finance Act by Public Act 94-839 was unconstitutional. However, the circuit court granted summary judgment on that claim only as to LAP and MAF, on the ground that the sweeps violated the state constitutional separation of powers. The circuit court found no just reason to delay enforcement or appeal of the order. 210 Ill. 2d R. 304(a).

Morawicz and Bowers sought to appeal the circuit court order in this court, on the ground that they did not receive all of the relief they sought. On December 3, 2007, this court entered an order striking the appeal from this court's docket, because the appeal involved a finding of unconstitutionality of a portion of a state statute, which requires any appeal be taken directly to

1-09-0316

the Illinois Supreme Court. On March 4, 2008, the Illinois Supreme Court entered an order transferring the appeal to this court pursuant to Supreme Court Rule 365. 155 Ill. 2d R. 365.

Meanwhile, Morawicz and Bowers continued to seek payment of interest on the funds swept from LAP and MAF, and that such interest be transferred from the general revenue fund. On June 18, 2008, the circuit court entered an order: (1) vacating the October 23, 2007, order; (2) declaring section 8.45 of the State Finance Act unconstitutional as applied to the LAP and MAF; (3) acknowledging that Hynes and Giannoulias returned $906,000 to MAF and $67,200 to LAP, constituting compliance with the order; (4) denying the motion for interest; (5) denying class certification; and (6) acknowledging that plaintiffs' request for attorney fees was subject to further proceedings.

On November 12, 2008, the circuit court entered an order denying plaintiffs' request for attorney fees. On November 18, 2008, Morawicz and Bowers filed a notice of appeal to this court.

DISCUSSION

I

On appeal, Morawicz and Bowers first argue that the Illinois Attorney General may not represent the Illinois Supreme Court or the LAP in this appeal. The Illinois Attorney General responds (by an assistant Attorney General) that the office has never purported to represent the Illinois Supreme Court or the LAP in this litigation. Rather, the Illinois Attorney General has represented Hynes and Giannoulias in their official capacities.

-3-

Morawicz and Bowers reply that the Illinois Attorney General had an obligation to provide counsel for the judicial branch or withdraw from the case. However, Morawicz and Bowers cite no legal authority in support of this assertion. While it is true that the rules prohibiting an attorney accepting representations that create a conflict between clients applies generally to the Illinois Attorney General, the office may represent two opposing state agencies in the same litigation. See Tully v. Edgar, 286 Ill. App. 3d 838, 846, 676 N.E.2d 1361, 1367 (1997) (and cases cited therein). The Tully court primarily relied on Environmental Protection Agency v. Pollution Control Board, 69 Ill. 2d 394, 372 N.E.2d 50 (1977), in which the Illinois Supreme Court stated:

"[A]lthough an attorney-client relationship exists between a State agency and the Attorney General, it cannot be said that the role of the Attorney General apropos of a State agency is precisely akin to the traditional role of private counsel apropos of a client. [Citation.] Indeed, where he or she is not an actual party, the Attorney General may represent opposing State agencies in a dispute. [Citations.]

The Attorney General's responsibility is not limited to serving or representing the particular interests of State agencies, including opposing State agencies, but embraces serving or representing the broader interests of the State. This responsibility will occasionally, if not frequently, include instances where State agencies are the opposing parties." Environmental Protection Agency, 69 Ill. 2d at 401, 372 N.E.2d at 52-53.

In this case, the Illinois Supreme Court ruled that the Illinois Attorney General is deemed to have a conflict of interest only where she is interested as a private individual or is an actual party to the

action. Environmental Protection Agency, 69 Ill. 2d at 400-01, 372 N.E.2d at 52. Accordingly, Morawicz and Bowers have not shown that the Illinois Attorney General was under a duty to withdraw as counsel.

Morawicz and Bowers complain that the Illinois Attorney General failed to protect the interest of the judicial branch in this litigation. However, counts I and II of their third amended complaint sought to have funds already transferred from LAP and MAF to the general revenue fund to be paid to plaintiffs and the plaintiff class. Count IV of the third amended complaint – asserting taxpayer standing – sought replenishment of the funds, but Morawicz and Bowers do not challenge the denial of that count on appeal. Count VII of the third amended complaint sought a declaration that section 8.45 of the State Finance Act as applied to judicial funds violated the constitutional separation of powers and demanded a "return" of the funds at issue, without specifying whether the funds were to be returned to the judicial branch or to plaintiffs and the plaintiff class. As plaintiffs sought to have funds already in the general revenue fund paid to themselves and the plaintiff class, Morawicz and Bowers have not shown that the Attorney General was under any legal obligation to provide or secure representation for any part of the judicial branch where, as here, no such entity was named as a party to the litigation. Indeed, in this case, the interest of the judicial branch was protected by the circuit court, which ordered that the transferred funds be returned to the judicial accounts.

Morawicz and Bowers further complain – without citation to the record on appeal – that on one hand, the Attorney General failed to notify the Illinois Supreme Court that it had the right to seek the appointment of a Special Attorney General to represent its interest, while complaining

on the other hand that the Attorney General contacted the Administrative Office of Illinois Courts about protecting the judicial branch's interest in any sums Morawicz and Bowers sought as attorney fees. A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository into which the appealing party may dump the burden of argument and research. E.g., Lopez v. Northwestern Memorial Hospital, 375 Ill. App. 3d 637, 648, 873 N.E.2d 420, 431 (2007). Appellate argument must include citation of the authorities and the pages of the record relied on; points not argued are waived. 188 Ill. 2d R. 341(e)(7); 210 Ill. 2d R. 341(h)(7). The appellants' brief in this case identifies no ruling on these issues to be appealed and no citation to where they are discussed in the record. Thus, this court shall not consider them in this appeal.

## II

Morawicz and Bowers next argue that the circuit court erred by not entering a permanent injunction against sweeps from the LAP and the MAF. Hynes and Giannoulias respond that Morawicz and Bowers abandoned this claim by failing to obtain a ruling on their request. See, e.g., Mortgage Electronic Systems v. Gipson, 379 Ill. App. 3d 622, 628, 884 N.E.2d 796, 802 (2008). Morawicz and Bowers reply simply that "[d]efendants are wrong."

The record on appeal shows that on October 28, 2008, Morawicz and Bowers filed a motion asking the court to enter a permanent injunction, with a proposed supplemental order attached thereto. Morawicz and Bowers have failed to show that the circuit court ever ruled on their motion. Accordingly, Morawicz and Bowers have abandoned the argument on appeal.

However, even if Morawicz and Bowers had not abandoned the argument, it would not

1-09-0316

persuade this court that the trial court was incorrect on this point. The argument rests on exceptions to the mootness doctrine, such as the public interest exception, which applies where the case presents a question of public importance that will likely recur and whose answer will guide public officers in the performance of their duties, and an exception for cases involving events of short duration that are capable of repetition, yet evading review. See In re Suzette D., 388 Ill. App. 3d 978, 983, 904 N.E.2d 1064, 1068 (2009) (and cases cited therein). Morawicz and Bowers assert that the issue should be "resolved without the necessity of having it litigated once again when and if the General Assembly and the Governor decided to get together and remove these funds illegally yet another time." However, as Hynes and Giannoulias note, the very separation of powers at the heart of this case also means that Illinois courts cannot enjoin either the General Assembly from passing a bill or the Governor from acting upon it. Spies v. Byers, 287 Ill. 627, 631, 122 N.E. 841, 843 (1919). Furthermore, assuming arguendo that the other branches of government could attempt to seize judicial funds in the future, Morawicz and Bowers have failed to show that such attempts would evade review. See In re Donrell S., 395 Ill. App. 3d 599, 603 (2009).

III

Morawicz and Bowers further argue that the circuit court erred in refusing to order that any interest accrued on the swept funds while in the general revenue fund be deposited with the LAP and MAF. Hynes and Giannoulias respond that the circuit court ruled correctly as a matter of law and fact. This court reviews questions of statutory interpretation – and other legal questions -- de novo, but we review the circuit court's factual findings only to determine if they

-7-

are against the manifest weight of the evidence. See, e.g., DeRose v. City of Highland Park, 386 Ill. App. 3d 658, 660, 898 N.E.2d 1115, 1118 (2008). "A finding is against the manifest weight of the evidence 'only if the opposite conclusion is clearly evident or if the determination is unreasonable, arbitrary, and not based on the evidence.' " In re D.W., 386 Ill. App. 3d 124, 139, 897 N.E.2d 387, 400 (2008), quoting In re Tiffany M., 353 Ill. App. 3d 883, 890, 819 N.E.2d 813, 820 (2004).

Section 4.1 of the State Finance Act provides in part as follows:

"Whenever the State Treasurer or other State officer receives interest from the investment or deposit of moneys received by the State on account of taxes, fees, licenses or other governmental assessments imposed or levied by the State or any of its agencies or instrumentalities, the Treasurer shall direct the Comptroller to deposit such interest into the General Revenue Fund, except where by specific statutory provisions such interest is directed to be credited to and paid to a particular fund." 30 ILCS 105/4.1(a) (West 2006).

Morawicz and Bowers assert that this statute does "not even arguably address the fees collected and used improperly and illegally taken from the Judicial System." However, even in this contention, plaintiffs concede that the funds involved were collected as fees. Morawicz and Bowers also assert that the "Illinois courts are not part of the Executive or Legislative Branch and are not therefore an 'agency' of the State of Illinois." But, the judicial branch is as much a part of the State of Illinois as the other two branches. See, e.g., Ill. Const. 1970 art. II, §1, art. VI, §1.

In addition, as Hynes and Giannoulias note, the fees collected for LAP and MAF are ultimately remitted to the State Treasurer. See 705 ILCS 235/20 (West 2006); 735 ILCS 5/2-1009A (West 2006).

In the alternative, Morawicz and Bowers argue that LAP and MAF fall within the exception provided in section 4.1 of the State Finance Act. They point to section 4 of the Public Funds Investment Act, which provides as follows:

"All securities purchased under the authority of this Act shall be held for the benefit of the public agency which purchased them, and if purchased with money taken from a particular fund, such securities shall be credited to and deemed to be a part of such fund, and shall be held for the benefit thereof. All securities so purchased shall be deposited and held in a safe place by the person or persons having custody of the fund to which they are credited, and such person or persons are responsible upon his or their official bond or bonds for the safekeeping of all such securities. Any securities purchased by any such public agency under authority of this Act, may be sold at any time, at the then current market price thereof, by the governing authority of such public agency. Except as provided in Section 4.1 of 'An Act in relation to State finance', [citation] all payments received as principal or interest, or otherwise, derived from any such securities shall be credited to the public agency and to the fund by or for which such securities were purchased." 30 ILCS 235/4 (West 2006).

Morawicz and Bowers fail to show that this case involves the purchase of securities, or that any interest they seek derived from the purchase of securities. Moreover, the plain language of the

statute shows that section 4.1 of the State Finance Act is an exception to section 4 of the Public Funds Investment Act, not vice versa.

Morawicz and Bowers also suggest that section 4.1 of the State Finance Act is unconstitutional as applied to interest accrued on judicial funds. They rely on Crocker v. Finley, 99 Ill. 2d 444, 459 N.E.2d 1346 (1984), in which the Illinois Supreme Court struck down a law authorizing a $5 circuit court filing fee to fund a domestic violence program. The Crocker court found the charge violated the Illinois Constitution's due process and equal protection clauses, because there was no rational relationship between imposition of the fee and litigants which would support funding of a general welfare program. The Crocker court ruled that "court filing fees and taxes may be imposed only for purposes relating to the operation and maintenance of the courts." Crocker, 99 Ill. 2d at 454, 459 N.E.2d at 1351. The supreme court added that "[i]f the right to obtain justice freely is to be a meaningful guarantee, it must preclude the legislature from raising general revenue through charges assessed to those who would utilize our courts." Crocker, 99 Ill. 2d at 455, 459 N.E.2d at 1351. The main thrust of the Crocker decision was its holding that the tax unconstitutionally burdened litigants' access to the courts. Arangold Corp. v. Zehnder, 204 Ill. 2d 142, 150, 787 N.E.2d 786, 792 (2003).

Crocker was not based on a separation of powers claim. The separation of powers clause of the Illinois Constitution provides that "[t]he legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, §1. Additionally, "[t]he judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts." Ill. Const. 1970, art. VI, §1. In " 'both theory and practice, the purpose of the

[separation of powers] provision is to ensure that the whole power of two or more branches of government shall not reside in the same hands.' " Best v. Taylor Machine Works, 179 Ill. 2d 367, 410, 689 N.E.2d 1057, 1078 (1997), quoting People v. Walker, 119 Ill. 2d 465, 473, 519 N.E.2d 890, 892 (1988). However, the separation of powers clause does not seek to achieve a complete divorce among the three branches of government. In re S.G., 175 Ill. 2d 471, 486-87, 677 N.E.2d 920, 927 (1997). Moreover, the clause does not require that governmental powers be divided into " 'rigid, mutually exclusive compartments.' " In re S.G., 175 Ill. 2d at 487, 677 N.E.2d at 927, quoting Walker, 119 Ill. 2d at 473, 519 N.E.2d at 892. The separation of powers doctrine allows for the three branches of government to share certain functions. Walker, 119 Ill. 2d at 473, 519 N.E.2d at 892. For example, the legislature has the concurrent constitutional authority to enact statutes that complement the supreme court's procedural rules. See Walker, 119 Ill. 2d at 475, 519 N.E.2d at 893. However, the legislature is not empowered to enact statutes that interfere with the procedural administration of the courts. People v. Joseph, 113 Ill. 2d 36, 47, 495 N.E.2d 501, 506 (1986); People v. Warren, 173 Ill. 2d 348, 367, 671 N.E.2d 700, 710 (1996). A statute cannot conflict with court rules or unduly infringe upon inherent judicial powers. People v. Bainter, 126 Ill. 2d 292, 302-03, 533 N.E.2d 1066, 1070 (1989).

In this case, both the LAP and the MAF are creations of the legislature in the first instance. Morawicz and Bowers cannot point to any provision of either statute directing that interest be credited to the LAP and MAF accounts. Morawicz and Bowers cannot point to any Illinois Supreme Court rule directing that interest be credited to the LAP and MAF accounts. Morawicz and Bowers have not shown that the disposition of any interest accruing on LAP or

1-09-0316

MAF funds unduly infringes upon inherent judicial powers or unconstitutionally burdens litigants' access to the courts.

In sum, the circuit court did not err in refusing to order that any interest accrued on the swept funds while in the general revenue fund be deposited with the LAP and MAF.

IV

Finally, Morawicz and Bowers argue that the trial court erred in denying their request for attorney fees. Hynes and Giannoulias respond that the circuit court lacked jurisdiction to award attorney fees and that jurisdiction over the issue rests with the Illinois Court of Claims. Morawicz and Bowers reply that the circuit court rejected the sovereign immunity argument Hynes and Giannoulias proffered and that Hynes and Giannoulias forfeited the argument by failing to appeal the case on its merits. Aside from the fee claim being separable from the merits, this court has a duty to consider whether the Court of Claims has exclusive jurisdiction over the fee claim. See Loman v. Freeman, 229 Ill. 2d 104, 128, 890 N.E.2d 446, 462 (2008). This court has ruled that expenses in civil litigation against the State must be considered a subject matter in which the Court of Claims is given exclusive jurisdiction. Kadlec v. Illinois Department of Public Aid, 155 Ill. App. 3d 384, 387, 508 N.E.2d 342, 345 (1987); see also Williams ex rel. Williams v. Davenport, 306 Ill. App. 3d 465, 468-69, 713 N.E.2d 1224, 1226 (1999) (and cases cited therein). Accordingly, this court lacks jurisdiction over the attorney fee claim.

CONCLUSION

In sum, Morawicz and Bowers failed to show that the Attorney General was under any legal obligation to provide or secure representation for the judicial branch in this case. Morawicz

-12-

1-09-0316

and Bowers have abandoned the argument that the circuit court should have entered a permanent injunction in this case by failing to secure a ruling on the issue in the circuit court. The circuit court did not err in refusing to order that any interest accrued on the swept funds while in the general revenue fund be deposited with the LAP and MAF. Jurisdiction over the claim for attorney fees rests with the Illinois Court of Claims. For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

QUINN and COLEMAN, JJ., concur.